IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VIRTUOSO, LTD., | § § § § § § § § § § § § | |
| Plaintiff, | | |
| V. | | No. 3:20-cv-383-K |
| WEB DEALS DIRECT, LLC and ADAM D. FEINBERG, an individual, | | |
| Defendants. | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Defendants Web Deals Direct, LLC and Adam D. Feinberg have filed a motion to partially dismiss Plaintiff Virtuoso, Ltd.'s First Amended Complaint and a motion for a more definite statement. *See* Dkt. No. 27. United States District Judge Ed Kinkeade has referred the motions to the undersigned United States magistrate judge for hearing, if necessary, and proposed findings and recommendations. *See* Dkt. No. 36. Plaintiff has filed a response, *see* Dkt. No. 33, and Defendants have filed a reply, *see* Dkt. No. 35.

For the following reasons, the undersigned recommends that the Court deny the motion to dismiss and alternation motion for a more definite statement.

**Background**

Virtuoso is a "global network of agencies specializing in luxury and experiential travel." Dkt. No. 26 ¶ 12. Among the services Plaintiff provides, it offers "travel related services that combine travel and art." *Id.* ¶ 17.

-1-

Web Deals is a company that sells art supplies online, *see id.* ¶ 19, and "Feinberg is the President of Web Deals," *id.* ¶ 3.

All of Plaintiff's claims in this case stem from Defendants' alleged infringement of 22 marks (together, the "Virtuoso Marks") and a copyrighted logo found in Plaintiff's "portfolio of intellectual property," which includes "the VIRTUOSO word mark, a family of VIRTUOSO-formative marks, the slogan SPECIALISTS IN THE ART OF TRAVEL[,] and a Globe Swirl Design Mark." *Id.* ¶ 13.

The dispute began in September 2017 when Plaintiff discovered that Defendants were selling art supplies under the name Virtuoso. *See id.* ¶ 19. In addition to the name being exactly the same as Plaintiff's, Defendants also used the tagline "Specialists of Art" and a logo that included a paintbrush and a swirl (the "Paintbrush Swirl Logo"). *Id.* Put together, Defendants' mark (right image) was nearly identical to Plaintiff's Virtuoso Marks (left image):




*Id.* ¶ 19.

Around the same time that Plaintiff uncovered Defendants' products, Plaintiff also found a website registered to Feinberg, vituosoarts.us, that promoted Defendants' art supplies. *See id.* Defendants' products were also listed on several major online retailers, including Amazon.com and eBay. *See id.* ¶ 20. And Plaintiff

-2-

discovered that, in August 2017, Web Deals had filed an application to trademark the "standard character word mark VIRTUOSO." *Id.*

In November 2017, Plaintiff sent a cease-and-desist letter to Defendants demanding that they stop using the infringing marks, adopt new marks that are not confusingly similar to the Virtuoso Marks, abandon their trademark application, change their product packaging, and remove all images of their infringing mark from any website. *See id.* ¶ 22. After Defendants agreed to some but not all of Plaintiff's demands, Plaintiff filed a request for a 90-day extension to oppose Defendants' trademark application with the Trademark Trial and Appeal Board ("TTAB"), giving Plaintiff until March 2018 to file an opposition. *See id.* ¶ 24.

After Defendants learned of Plaintiff's intent to oppose their trademark application, the parties exchanged multiple emails and letters attempting to resolve Plaintiff's demands. *See id.* ¶¶ 25-29. On March 14, 2018, having failed to come to any resolutions, Plaintiff filed an opposition to Defendants' trademark application, and TTAB proceedings began. *See id.* ¶ 30.

In November 2018, shortly after the TTAB denied a motion to dismiss filed by Defendants, *see id.* ¶ 34, Defendants offered to settle, *see id.* ¶ 37. The parties then negotiated for over six months until, on July 10, 2019, they finally reached agreement. *See id.* ¶¶ 39, 41.

As part of the settlement, Defendants agreed to "phase out and permanently cease all use of Defendants' Virtuoso mark," take down "the virtuosoarts.us website," "adopt a new trademark that is not confusingly similar, or even similar, to the

Virtuoso Marks," and "provide [Plaintiff] with a letter confirming compliance with the terms of the Agreement" by December 31, 2019. *Id.* ¶ 41.

On December 23, 2019, Plaintiff discovered that Defendants had begun using the brand name and trademark VIRTUOUS ARTS. *See id.* 43. Defendants had filed for the application for the VIRTUOUS ARTS mark in October 2018 while the TTAB proceedings were pending, *see id.* ¶ 35, and the mark registered two weeks after the parties entered the settlement, *see id.* ¶ 42.

On January 7, 2020, Defendants sent Plaintiff a letter "asserting that [they] had fully performed their obligations under the Agreement." *Id.* ¶ 46. But, on that same day, Plaintiff determined that the virtuosoarts.us website was still active, still displayed Defendants' Virtuoso mark, and still promoted Defendants' products. *See id.*

Plaintiff sent a demand letter the next day notifying Defendants that they were in breach of the settlement agreement and therefore liable for liquidated damages of $10,000 for each day that they were in breach. *See id.* ¶ 47. Plaintiff gave Defendants a chance to cure the breach within two days. *See id.* Defendants did not cure by the deadline. *See id.*

After Defendants finally took down the website, Plaintiff demanded Defendants pay the liquidated damages owed for their breach. *See id.* ¶ 50. When Defendants failed to pay, Plaintiff filed its original complaint and this case began. *See* Dkt. No. 1.

In its First Amended Complaint ("FAC"), Plaintiff brings eight causes of action for (1) breach of contract, (2) federal trademark infringement under 15 U.S.C. § 1114, (3) cancellation of Defendants' VIRTUOUS ARTS trademark under 15 U.S.C.

§§ 1052(d), 1119, (4) federal unfair competition under 15 U.S.C. § 1125(a), (5) common law trademark infringement, (6) unfair competition and misappropriation under Texas law, (7) violation of the Texas Business and Commerce Code § 16.103, and (8) federal copyright infringement under 17 U.S.C. §§ 106(2), 501. *See* Dkt. No. 26 at 1.

Defendants then filed the present motion. *See* Dkt. No. 27. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) all claims against Feinberg in his individual capacity, the trademark infringement claims regarding the Virtuoso Marks and the VIRTUOUS ARTS mark, and the Texas unfair competition and misappropriation claim. *See id.* at 1-2.

In the alternative, Defendants move under Federal Rule of Civil Procedure 12(e) for a more definite statement "with respect to the VIRTUOUS ARTS text mark" and the "basis for relief and any factual allegations surrounding the" Virtuoso Marks. *Id.* at 15-16.

**Legal Standards**

**I.     Motion to Dismiss.**

In deciding a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiff must allege more than labels and conclusions, and, while a court must accept all of the Plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds

for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 574 U.S. at 12), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina*, 495 F.3d at 205. Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim.*" Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D.

Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion," where, although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties," the United States Court of Appeals for the Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

## II.   Motion for a More Definite Statement.

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which

is so vague or ambiguous that the party cannot reasonably prepare a response," and "[t]he motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." FED. R. CIV. P. 12(e). "A motion for a more definite statement under Rule 12(e) is available where the pleading 'is so vague or ambiguous that the party cannot reasonably prepare a response.'" *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611, 621 (N.D. Tex. 2013) (quoting FED. R. CIV. P. 12(e)). "Motions for a more definite statement are generally disfavored." *Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-cv-1790-D, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012) (internal quotation marks omitted). "When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Id.* (internal quotation marks omitted).

## Analysis

### I. Plaintiff states plausible claims against Feinberg in his individual capacity.

Plaintiff's allegations are sufficient to show that Feinberg is liable in his individual capacity as to all of Plaintiff's claims.

Defendants' contention that Plaintiff has not pled any plausible allegations as to Feinberg individually is not persuasive. Defendants' primary argument is that Plaintiff's allegations do not differentiate between Web Deals and Feinberg. *See* Dkt. No. 27 at 4. Defendants argue that, because there are few allegations naming Feinberg specifically, Plaintiff has failed to state a claim against him. *See id.* at 4-13.

But collective allegations against multiple defendants are sufficient at the pleading stage, *see Liquid Manna, LLC v. GLN Glob. Light Network, LLC*, No. 14-cv-1123, 2015 WL 4068623, at *3 (W.D. Tex. July 2, 2015) (rejecting dismissal where "Plaintiff's Complaint, which refers to Dartez and GLN collectively as 'Defendants,' asserts that Dartez and GLN each engaged in the conduct alleged and are thus each liable on the stated cause of action"), so long as the allegations provide "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570. Considering both the collective allegations against and the allegations as to Feinberg specifically, Plaintiff adequately states claims to relief.

Regarding the breach of contract claim, Plaintiff attached the parties' settlement agreement, which states that Feinberg is a party to the agreement in both his individual capacity and as president of Web Deals. *See* Dkt. No. 26, Ex. 4 at 1, 6. The signature block that Feinberg signed states: "Adam D. Feinberg, Individually." *Id.* at 6. Plaintiff alleges that Defendants breached the agreement by failing to take down the virtuosoarts.us website, which was registered to Feinberg, by the deadline. *See* Dkt. No. 26 ¶¶ 46-49. And Plaintiff is owed damages due to the liquidated damages clause in the agreement. *See id.*, Ex. 4. Based on these allegations, there is a clear basis for Plaintiff's breach of contract claim against Feinberg in his individual capacity.

As to the remaining claims, Plaintiff alleges that the virtuosoarts.us website was registered by Feinberg and that the website "promoted [Defendants'] products." *Id.* ¶ 19. Defendants allegedly sold those products online, and those products

displayed Defendants' Virtuoso mark. *See id.* Plaintiff adequately alleges that Defendants' mark infringes their trademark and copyright protected Virtuoso Marks, and so Plaintiff's allegations support the trademark and copyright infringement claims.

Defendants' contention that Feinberg cannot be liable because he was acting as President of Web Deals is not correct. A corporate officer may be personally liable for trademark infringement when an individual performs the act or does the things that the patent or trademark law protects against. *See Taylor Made Golf Co., Inc. v. MJT Consulting Group, LLC*, 265 F. Supp. 2d 732, 746 (N.D. Tex. 2003). Thus, "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." *John Crane Prod. Sols., Inc. v. R2R & D, LLC*, No. 3:11-cv-3237-D, 2012 WL 1571080, at *4 (N.D. Tex. May 4, 2012) (quoting *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994)).

In sum, despite Defendants' denials that Feinberg, in his individual capacity, did any of the wrongful actions Plaintiff alleges, *see* Dkt. No. 27 at 4-12, the Court must accept as true Plaintiff's well pled allegations, "viewing them in the light most favorable to" Plaintiff. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). Plaintiff's allegations as to Defendants collectively, which include Feinberg individually, plausibly state claims for relief.

## II. Plaintiff states plausible infringement claims as to all their marks.

Plaintiff's allegations are sufficient to state a claim for trademark infringement. It is plausible that Defendants' marks, including the VIRTUOUS ARTS mark, infringe all 22 of the Virtuoso Marks because the Virtuoso Marks are legally protectable and there is a likelihood of confusion.

"To prove infringement, a plaintiff must show that he owns a legally protectable mark and that there is a likelihood of confusion between that mark and the defendants' allegedly infringing material." *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 697 (S.D. Tex. 2009).

First, Plaintiff adequately alleges that its Virtuoso Marks are legally protectable. Plaintiff alleges that it "possesses extensive and valuable rights" in the Virtuoso Marks, *see* Dkt. No. 26 ¶ 13, and Plaintiff attached to its FAC the certificates of registration for each of the marks, *see id.*, Ex. B. Defendants do not contest that this is sufficient to show a legally protectable interest in the marks.

Second, Plaintiff adequately alleges a likelihood of confusion. "In the context of a Rule 12(b)(6) motion, the district court assesses whether the facts alleged, taken as true, demonstrate that a likelihood of confusion is plausible." *Transparent Energy LLC v. Premiere Mktg. LLC*, No. 3:19-cv-3022-L, 2020 WL 4678438, at *5 (N.D. Tex. July 28, 2020), *report and recommendation adopted sub nom.* No. 3:19-CV-3022-L, 2020 WL 4673102 (N.D. Tex. Aug. 12, 2020). Plaintiff alleges that Defendants sold art supplies using the identical name Virtuoso, the tagline "Specialists of Art," and the Paintbrush Swirl Logo. Dkt. No. 26 ¶ 19. Plaintiff alleges that the Paintbrush

Swirl Logo is nearly identical to its Globe Swirl Design Mark, that the "words displayed" on Defendants' tagline used "a similar font" to its Virtuoso Marks, and that Defendants' mark used "the same color scheme." *Id.* As the images in the FAC show, Defendants' and Plaintiff's marks are nearly identical. *See id.* These allegations "demonstrate that a likelihood of confusion is plausible." *Transparent Energy*, 2020 WL 4678438, at *5.

And Plaintiff plausibly alleges a likelihood of confusion as to Defendants' VIRTUOUS ARTS mark and the Virtuoso Marks, specifically. Plaintiff alleges that, after they signed the settlement agreement, "Defendants adopted, started using, filed a federal trademark application, and registered the mark VIRTUOUS ARTS." Dkt. No. 26 ¶ 10. Plaintiff alleges not only that the VIRTUOUS ARTS mark is confusingly similar to its own Virtuoso Marks, *see id.* ¶ 40, but that it is a "confusing similar derivative of [Defendants'] Virtuoso mark," *id.* ¶ 43. Plaintiff alleges that Defendants changed its original Virtuoso mark to the "confusingly similar" VIRTUOUS ARTS mark to skirt their obligations under the settlement agreement while still maintaining its original product listing online and ensuring that the Defendants' original Virtuoso products and the VIRTUOUS ARTS products "are the same … from the consumer's perspective." *Id.* Taking these allegations as true, the Court should find that these allegations suffice to meet the plausibility threshold.

Contrary to Defendants' arguments, Plaintiff's allegations as to all 22 of its Virtuoso Marks listed in Exhibit 1 of its FAC are sufficient. The Virtuoso Marks include the VIRTUOSO word mark, the SPECIALISTS IN THE ART travel slogan,

the Global Swirl Design Mark, and a family of VIRTUOSO-formative marks. *See* Dkt. No. 26 ¶ 19. Plaintiff listed additional marks that are in the same class as these marks "to afford broader protection of its marks." Dkt. No. 33 at 8. For example, Plaintiff lists three registrations under its Globe Swirl Design Mark, which, as shown above, is almost identical to Defendants Paintbrush Swirl Logo. *See id.* Ex. A. Because of the similarity of the marks in each class, Plaintiff's collective allegations as to the Virtuoso Marks are sufficient to state a claim for infringement as to each of them individually.

And Plaintiff's allegation that the VIRTUOSO-formative marks are a "family of marks" cuts against Defendants' arguments that they are not relevant to the infringement claims. "A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991). If the Court determines that the Virtuoso Marks are a family, that would be a factor as to whether there is a likelihood of confusion. Thus, all 22 of the marks alleged are relevant to Plaintiff's claims.

### III.  A more definite statement is not necessary.

The Court should deny Defendants' request under Rule 12(e) for a more definite statement. Plaintiff makes clear which marks it believes Defendants infringed: all of them. And Plaintiff's FAC includes short and plain statements of the legal bases and sufficient factual allegations to state plausible claims as to all of them.

Any ambiguity as to Plaintiff's allegations and claims "can be clarified and developed during discovery" and does not "impede [Defendants'] ability to form a responsive pleading." *Johnson*, 2012 WL 5903780, at *4.

### IV. Plaintiff's unfair competition and misappropriation claim is not preempted.

The Lanham Act does not preempt the Texas law for unfair competition and misappropriation because none of the types of preemption are applicable. "Under the doctrine of federal preemption, a federal law supersedes or supplants an inconsistent state law or regulation," *United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016), "in three different ways: when Congress does so expressly; when federal law occupies the entire field of regulation; and when state law conflicts with federal law." *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 195 (5th Cir. 2019). "The party asserting federal preemption has the burden of persuasion." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011).

Defendants argue that preemption is appropriate because the standard for "Plaintiff's state law claim for unfair competition would be the same as its claim ... for federal trademark infringement under the Lanham Act." Dkt. No. 27 at 21. But overlap between state and federal laws does not automatically give rise to preemption. Defendants must show that one of the "three distinct types of preemption" are applicable. *Zadeh*, 820 F.3d at 751. Here, Defendants fail to meet their burden of persuasion that the Lanham Act preempts state common law under any type of preemption.

To start, the Lanham Act does not expressly preempt state unfair competition laws. To show express preemption, Congress must "explicitly state its intent to preempt relevant state laws." *Zadeh*, 820 F.3d at 751. "Federal trademark law, as codified in the Lanham Act, does not explicitly preempt all state laws concerning trademarks." *Duncan v. Freeman*, No. 3:14-cv-1827-G, 2014 WL 5286619, at *5 (N.D. Tex. Oct. 15, 2014) (citing 15 U.S.C. § 27); *see also Vollara LLC v. Ecotechworld, Inc.*, No. 3:18-cv-2779-L, 2019 WL 1746069, at *5 (N.D. Tex. Apr. 17, 2019) ("[T]he Lanham Act is a federal statute that would preempt state law if it contained an express statement that it did so, but it does not.").

And, since "[i]t is settled that the Lanham Act does not in general preclude state unfair competition statutes from operating, ... 'field' preemption is a dubious argument." *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 41 (1st Cir. 2006) (citation omitted). Field preemption is applicable when "Congress intends to 'occupy the field,' taking over a field of law to the exclusion of state or local authority." *Zadeh*, 820 F.3d at 751. There is no indication that Congress intended to occupy the trademark and unfair competition fields; rather, the Lanham Act is "cumulative of, and does not preempt, the broader consumer-oriented remedies provided by the common law of unfair competition." *20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 93 n.15 (2d Cir. 1984) (quoting *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 (1st Cir. 1980), *repudiated on other grounds by Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 8 (1st Cir. 1981)).

Without either express or field preemption, the Texas unfair competition and misappropriation claim "is not preempted by the Lanham Act unless the two are in direct conflict." *Duncan*, 2014 WL 5286619, at *5. Conflict preemption is shown when "compliance with both state and federal law is impossible" or the "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Zadeh*, 820 F.3d at 751. But – as Defendants themselves point out – far from conflicting, "[a] trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010) (quotations omitted). Indeed, "[u]nfair competition claims under Texas law are analyzed under the same standard as claims under the Lanham Act." *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 763 (N.D. Tex. 2013). Even though that means the Court's determination as to liability on Plaintiff's Lanham Act claim can be applied to its unfair competition claim, that does not mean the state claim is preempted. *See Viacom Int'l Inc. v. IJR Capital Investments, LLC*, 242 F. Supp. 3d 563, 575 (S.D. Tex. 2017) (granting summary judgment because "the same facts that support an action for trademark infringement under Texas common law also support an action for unfair competition under the Lanham Act").

## Recommendation

For the reasons stated above, the Court should deny Defendants' Motion to Dismiss under 12(b)(6) and their Motion for a More Definite Statement under 12(e) [Dkt. No. 27].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: January 29, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE